## LANESBOROUGH AND NEW ASHFORD.

The inhabitants of a district, whose act of incorporation authorized them to join with a neighboring town in the choice of representatives, but did not require the selectmen of the latter, in any way, to give notice to the inhabitants of the district of the time and place of meeting for that purpose, were held not to be entitled to vote in such choice, unless they were legally warned to attend the meetings therefor; although they had been accustomed, for many years after the act, to attend the meetings of the town for the choice of representatives, without any warrant being previously issued by the selectmen of the district for the same; and although it had been the practice of the selectmen of the town, for some years, to give seasonable notice of such meetings to the selectmen of the district, who thereupon issued their warrants accordingly to the inhabitants of the same: It was held, also, that if no legal notice of a meeting of the town for the choice of representatives was given to the inhabitants of the district in consequence of a neglect of the selectmen of the town to give information thereof to the selectmen of the district, the town might nevertheless refuse to receive the votes of the electors of the district, (although after receiving them at one balloting) and might alone choose a representative.

Where the return of a representative, elected by the votes of a town and a district annexed to it for the purpose of electing representatives, was signed by the selectmen of the town only, the house directed the member to procure a certificate of the selectmen of the district.

THE election of Henry Hubbard, returned a member from the town of Lanesborough and the district of New Ashford, was controverted by the selectmen of New Ashford, and by Samuel H. Wheeler and others, on the ground, that at the meeting of the said town and district, for the choice of a representative, the votes of New Ashford were refused by the selectmen of Lanesborough. The seat of Mr. Hubbard was also claimed by Henry Shaw, who alleged himself to have been elected by a majority of the votes given in at the said meeting.[1]

The committee on elections, at the January session, made the following report in this case, which was agreed to:—

" That by an act of this commonwealth, passed the 26th day of February, 1781, (st. 1780, c. 20,) a certain tract of land called New Ashford, in the county of Berkshire, was incorporated into a district, by the name of New Ashford, and vested with all the powers of towns in this commonwealth, that of sending a representative to the general court excepted,

[1] 35 J. H. 11.                      [2] Same, 420.

'but for that purpose had liberty granted them to join with the town of Lanesborough;' that availing themselves of that liberty, the inhabitants of New Ashford joined with the town of Lanesborough, in the choice of a representative for said town and district, from the time of its incorporation to the ninth of May last, without any objection from said town; that it was the practice of the inhabitants of said district, who were qualified to vote in the choice of a representative, to repair to Lanesborough, and give in their votes for a representative promiscuously with the legal voters of Lanesborough, till the year 1804, no warrant previously to that time ever having been issued by the selectmen of New Ashford to notify the voters therein of the meeting; that from said time to the present year, warrants have been issued for said purpose, and seasonable notice of the meeting used to be given by the selectmen of Lanesborough to the selectmen of New Ashford until the present year, when no such notice was given; that the practice has been for the selectmen of both town and district to preside at said meeting, and both to sign the certificate of the person elected.

The committee further report, that, pursuant to a warrant issued by the selectmen of Lanesborough, the qualified voters therein met on the second day of May last, for the choice of representatives; those of New Ashford met with them for the same purpose. The selectmen of Lanesborough called for and collected the Lanesborough votes, and then handed the hat, with the votes therein, to the selectmen of New Ashford, for them to collect their votes, but on being sorted and counted, there resulted no choice. A debate ensued on the expediency of voting again, but the meeting was adjourned by the joint vote of the town and district, to the ninth day of May following.

The committee further report, that on said day the town and district again met for the purpose aforesaid, and after the meeting was opened, and previously to the votes being called for, a gentleman of Lanesborough proposed to the meeting, that to avoid further difficulty, they should proceed and elect

both of the candidates for representatives, who had the principal part of the votes of the former meeting. This proposition was objected to by several persons present, upon which the Hon. Mr. Hubbel, of Lanesborough, stated, that unless the proposition was acceded to, the votes of New Ashford should not be received and counted with the votes of Lanesborough in the choice of a representative, as the town of Lanesborough was determined to choose one by themselves, after which the district might choose another without opposition ; this declaration he said he made to the meeting, at the request of a number of gentlemen of said town, among whom were the selectmen, who had previously agreed to pursue this course. The selectmen of Lanesborough then called for the votes of the town, which being sorted and counted, there were for Henry Hubbard Esq., 106 votes, Henry Shaw, 88 votes, scattering 5 ; they then declared Henry Hubbard, Esq., elected by a majority of 13 votes, and gave the hat, in which they were received, to the selectmen of New Ashford, who collected their votes, and calling on the selectmen of Lanesborough to assist in counting them (which they refused to do) found for Henry Shaw, 41 votes, Henry Hubbard, 4, scattering 1 ; they then added the votes of town and district together, and declared Henry Shaw elected by a majority of 13 votes, and thereupon made out a certificate of his election, and requested the selectmen of Lanesborough to sign it with them, which they also refused.

The committee further report, that for want of information of the time of the meeting in Lanesborough, no warrant was issued by the selectmen of the district to notify the voters therein, and no notice other than verbal was given them of the meeting.

The committee do further report, that they have examined the act giving liberty to said district to join with Lanesborough in the choice of a representative, as well as other acts incorporating other districts with similar privileges ; and as it has been determined by the justices of the supreme judicial court, that the right a town has of sending a representative is a corporate right, which decision has been recognized by this

24

house, so the committee consider that the right of a district to join with a town in choosing one must also be corporate, and the legal voters therein must exercise their privilege of voting as members of their corporation. And as a corporation cannot legally perform any corporate act unless its members are duly notified and convened, and it appearing to the committee that the qualified voters in said district, at the meeting aforesaid, were not so convened, no warrant for notifying said meeting having been issued by the selectmen thereof, as before mentioned, consequently their votes, in the opinion of the committee, could not legally be received and counted at said election; but as it appears that Henry Hubbard, Esq., had a majority of the votes of the qualified voters of the town of Lanesborough, duly notified and convened for the choice of a representative, on the said ninth day of May, as before stated, the committee ask leave to report, and do unanimously report, that the said Henry Hubbard, Esq., was duly elected, and is entitled to his seat."

NOTE.   The colony charter, granted by Charles I., did not distinctly authorize the freemen of " Massachusetts Bay," to elect representatives, but in general terms made it lawful for the governor or the deputy governor and the assistants and freemen assembled in general court, or other court specially summoned for the purpose, to make ordinances and laws for settling forms of government and magistracy, and such officers as they might find " fit and necessary for said plantation."

The colonial ordinances respecting representatives, which passed in 1636, '38, and '53, and were formed into one in 1658, made it " lawful for the freemen of every town to choose (by papers) deputies for the general court." Then followed a provision: " No town shall send more than two deputies, and no town that hath not to the number of twenty freemen shall send more than one deputy; and such plantations as have not ten freemen shall send none, but such freemen may vote with the next town, in the choice of their deputies, till this court take further order." The manner, in which the freemen of such plantations should be warned to meet with those of

an adjoining town, is not directed in these ordinances. Nor does it very clearly appear, from any of the colony laws, how town meetings were warned. Nothing more definite and particular is to be found, than that it was the duty of the constables of every town, to " call together their freemen," to give in their votes for magistrate.

The province charter, granted by William and Mary, ordained that the great and general court or assembly should " consist of the governor and council or assistants for the time being, and of such freeholders of the province, as should be elected by the freeholders, and other inhabitants of the respective towns or places." And each town and place was thereby " empowered to elect and depute two persons and no more, to serve for, and represent them respectively, in the said great and general court or assembly." This charter also gave authority to the general court, " from time to time, to direct, appoint, and declare, what number each county, town, and place, should elect and depute to serve for, and represent them respectively." By virtue of this authority, the general court, in 1692, passed an act, which contained the following clause: " That henceforth every town within this province, consisting of the number of forty freeholders, and other inhabitants, qualified by charter to elect, shall, and hereby are enjoined to choose and send one freeholder as their representative; and every town consisting of the number of one hundred and twenty freeholders and other inhabitants, qualified as aforesaid, or upwards, may send two such representatives; and each town of the number of thirty freeholders and other inhabitants qualified as aforesaid, or upwards, under forty, are at liberty to send one or not. And all towns under thirty freeholders, may send one to represent them, or join with the next town, in the choice of their representatives, they paying a proportionable part of the charge." —Stat. 4. of William and Mary, c. 19.

The ratio of representation was subsequently altered, but no new provisions were introduced respecting the union of towns and districts in the choice of representatives.

The statute of 4 William and Mary, cited above, also di-

rected, that when the governor should see fit to convene a general court, writs should issue from the secretary's office, directed to the sheriffs or marshalls, commanding them to send precepts, to the selectmen of the several towns, to assemble the freeholders, &c., to elect one or more representatives, according to their numbers ; and the selectmen were directed to preside at the meetings, and to make return, under their hands.

A previous statute passed in the same year, had made it the duty of the constables of the several towns, to warn all town-meetings, having a written order therefor from the selectmen.

It does not appear, however, from the province laws, in what manner " towns under thirty freeholders " were to be warned, when they chose to " join with the next town in the choice of their representatives."

But the legislature, under the last charter, incorporated several new towns, " with all the powers, privileges and immunities of other towns, that of sending a representative to the general assembly only excepted."  In some instances, the new towns were to have no vote in the choice of representatives, as Belchertown, Shutesbury, and Coleraine, incorporated in 1761.  In others, a right was granted to them to join with a contiguous town in the choice of a representative, as Great Barrington in the same year, Wilbraham in 1763, and Fitchburg, in 1764.  In these cases, the selectmen of the old towns, with which the new had liberty to unite, were directed to issue their warrant to the constables of the new town, requiring them to notify the inhabitants of such town, of the time and place of meeting for the choice of a representative.

In many instances, under the provincial charter, the legislature incorporated districts, and invested them with all the powers of towns, except that of sending a representative. Some of these districts were left entirely without a voice in the election of a representative, as Ware and Natick.  Others had liberty granted them to join for that purpose with a neighboring town, as Oakham, Pepperelborough, South Brimfield, Stoughton.  In these cases, the statutes incorporating the

districts directed the mode in which they should be notified of
the time and place of election.    The mode was not uniform.
In the majority of statutes, which have been examined, the
selectmen of the town were directed to issue a warrant to
the constable of the district, requiring him to notify the in-
habitants of the district.   Some statutes directed the select-
men of the town to give notice to the clerk of the district, of
the time and place of meeting, who was to set up notifications
thereof in some public place in the district.   Other statutes
directed the selectmen of the town to give notice to the in-
habitants of the district.

Under the constitution, the legislature have also incorporated
districts, with all the powers of towns, except that of sending
a representative.   For this purpose, they have, with a few
exceptions, (as Plainfield, Bethlehem,) had liberty to unite
with an adjoining town.   And in all cases that have been
found, except that of New Ashford, the statute directs the
selectmen of the town, to give notice of the time and place of
meeting to the district, and points out the manner.   In some
cases, they are to issue their warrant to the constables of the
district, requiring them to notify the inhabitants ; in some, to
give notice in writing, to the selectmen of the district, " to the
intent that they may issue their warrant to the constables, to
warn the inhabitants ;" in others, to give similar notice to the
clerk of the district.

The act erecting New Ashford into a district was the first
of the kind that passed after the adoption of the constitution,
and by it, " the said district is invested with all the privileges,
powers and immunities that towns in this commonwealth by
law do or may enjoy, that of sending a representative to the
general assembly only excepted, but hereby have liberty
granted to them to join with the town of Lanesborough for
that purpose."   No provision is made in this act, for giving
notice to the inhabitants of New Ashford, of the time and
place of meeting for the choice of representatives, nor is there
any general statute, which provides for such cases.

The constitution secures to " every corporate town, contain-

ing one hundred and fifty ratable polls," the right to elect a representative. This right is corporate, and has always been held to be incident to towns incorporated since, as well as those which existed before the adoption of the constitution. And it may be questionable, whether under the province charter, the legislature had authority to prohibit a town incorporated by them, from sending a representative. The charter conferred the right as explicitly as the constitution. And it is not easily perceived, how the right could be legitimately restrained under the former, more than under the latter. Indeed, the provincial legislature, in 1775, declared all such restraining acts, even in the case of districts as well as towns, to be "against common right, and in derogation of the rights granted by the charter." With respect to districts, the spirit of the times seems to have carried the declaration too far,—for these corporations had no more rights under the charter, than they have under the constitution,—and it has never been contended that, by the constitution, districts, when incorporated, have of course a right to send a representative to the legislature. It is believed, however, that towns have always had this right, from the time of the first colonial ordinances on the subject.

Had the statute incorporating the district of New Ashford, made it the duty of the selectmen of Lanesborough, in any way, to give notice to the inhabitants of the district, of the time and place of meeting for the choice of a representative, their neglect of such duty might have presented a different question to the consideration of the committee and the house. But as no such legal duty was imposed on them, and as the town of Lanesborough, containing the requisite number of ratable polls, had a right, independently of its connexion with the district, to send a representative; as the meeting of the inhabitants of the town was legally warned (and no question was made respecting the legality of the adjournment); as it is clear that the inhabitants of the district could not legally vote, without being legally warned; there seems to be no room for doubt concerning the correctness of the report of the com-

mittee, and the decision of the house. The neglect of the district could not deprive the town of a right, which the constitution had secured to it, before the district had a corporate existence.

When a town and district unite in the choice of representatives, the practice has been, as far as is known, for the selectmen of both to join in making and signing a certificate and return of the election. This practice has been sanctioned by the house of representatives. In 1812, the return from the town of Buckfield, was not signed by the selectmen of the district of Hiram, which is annexed to that town for the purpose of choosing a representative, and the house directed the member returned, to produce a certificate of the selectmen of the district, in order to hold his seat. And if the inhabitants of New Ashford had been legally warned, the return in the above case, signed by the selectmen of Lanesborough alone, would have been insufficient.